## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

ALICE E. CRIPPS,                )
                                )
         Plaintiff,             )
                                )
v.                              )     Case No. CIV-14-416-JHP-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
         Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Alice E. Cripps (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### **Claimant's Background**

Claimant was born on November 6, 1973 and was 39 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a certified nurse's aide. Claimant alleges an inability to work beginning March 1, 2010 due to limitations resulting from degenerative disc disease, morbid obesity, anxiety, and depression.

**Procedural History**

On July 18, 2011, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 28, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") James Bentley by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. The ALJ entered an unfavorable decision on April 15, 2013. The Appeals Council denied review of the decision on August 1, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC and credibility determination; and (2) making erroneous findings at step five. Claimant also contends the record

does not contain her brief before the Appeals Council as well as the additional evidence she submitted to the Council.

**RFC and Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease with spinal stenosis, morbid obesity, obstructive sleep apnea, chronic obstructive pulmonary disorder ("COPD"), asthma, bilateral carpal tunnel syndrome, anxiety, and depression. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform light work except that she could only occasionally finger and handle bilaterally; could perform simple tasks with routine supervision; could have occasional contact with co-workers and supervisors; and could have occasional contact with the general public. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of conveyor line bakery worker and parking lot attendant. (Tr. 22). As a result, the ALJ found Claimant was not disabled since July 18, 2011. Id.

Claimant first contends the ALJ's RFC and credibility determinations are flawed. She asserts the ALJ rejected the opinion of a treating physician erroneously and without evidentiary support. On November 29, 2011, Dr. Nicholas J. Bentley authored an

5

RFC evaluation form on Claimant. He concluded Claimant could sit for 15 minutes at one time and three hours during an eight hour workday; stand and walk for 10 minutes at one time and stand for two hours and walk for one hour in an eight hour workday; Claimant would need rest breaks at hour intervals or less; she would need to alternate between sitting and standing at 15 minute intervals or less; and Claimant could lift and carry 0-5 pounds occasionally and up to 20 pounds rarely. (Tr. 403-04).

Dr. Bentley found Claimant's lower extremities to be limited and in need of elevation when Claimant is seated. He determined Claimant could bilaterally push/pull, work above shoulder level, work overhead, and reach occasionally but rarely work in an extended position. Claimant could rarely grasp with either hand or engage in fingering or fine manipulation. Claimant could also rarely bend, squat, crawl, stoop, crouch, kneel, balance, climb stairs, or climb ramps but never climb ladders or scaffolds. (Tr. 404-05).

Dr. Bentley imposed mild restrictions on Claimant's driving/riding in automotive equipment, exposure to high noise levels, and engaging in fine visual acuity. The objective basis for Dr. Bentley's findings are identified as Claimant's bilateral carpal tunnel syndrome and her severe sleep apnea. (Tr. 405).

6

The ALJ acknowledged Dr. Bentley's evaluation but gave the opinion "little weight", stating it was inconsistent with the objective medical evidence as a whole. He based this finding upon (1) Claimant lifting papers off the table at the hearing which he found to be inconsistent with limiting her to rarely grasping; (2) the lack of treatment records which supported the opinion that Claimant could rarely bend, squat, stoop, or crouch; (3) two negative MRI scans; and (4) the lack of any assistive device or gait disturbance. (Tr. 19).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

7

provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Bentley's treatment records dated August 8, 2011 indicate

that Claimant reported that an MRI showed spinal stenosis. He noted Claimant was morbidly obese at 314 pounds. An examination of her back indicated Claimant was "very tender over the S1 joint and the L4-5 region. Straight leg raising pain is positive." (Tr. 312). Yet, the results of the MRI in the record taken August 12, 2010 indicate that Claimant's lumbar spine was normal. (Tr. 264).

Further, a consultative examination performed by Dr. Traci L. Carney on September 17, 2011 found no point tenderness, adequate peripheral pulses, no edema, grip strength 5/5 bilaterally strong and firm, the ability to perform gross and fine tactile manipulation, adequate finger to thumb opposition, no effusion or edema of the knees with stability in all range of motion exercises, and great toe strength equal bilaterally. Cervical and thoracic spines were non-tender with full range of motion and straight leg raising reflex was negative bilaterally in the sitting and supine positions. Claimant's gait was safe and stable without assistive devices. Heel/toe walking was normal and her tandem gait was within normal limits. (Tr. 295).

Claimant suggests that she sent additional evidence in the form of more treatment records from Dr. Bentley to the Appeals Council but it was inexplicably not included in the record. Defendant offers an explanation in stating Claimant's counsel

9

submitted the documentation by facsimile but sent it to the wrong number.  The Appeals Council is required to consider new, material, and chronologically relevant evidence submitted to it.  20 C.F.R. §§ 404.970(b) and 416.1470(b); Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004).  Dr. Bentley's subsequent notes which were never presented to the Appeals Council indicates Claimant had degenerative changes which precipitated chronic pain.  In February of 2012, Dr. Bentley noted Claimant's subjective complaints of pain but noted a history of mild arthropathy with a normal MRI of the lumbar spine.  He reduced Claimant's pain medication despite Claimant's request for more, indicating he did not believe she needed that level of pain medication.

He noted in July of 2012 that Claimant "chronically takes care of her disabled husband.  She does do a large amount of work in moving him around and does have multiple reasons to be hurting as much as she does."  Claimant requested refills for chronic pain.  *See*, *Plaintiff's Brief* filed January 30, 2015 (Docket Entry #16), unnumbered attachment.  This evidence does not deviate substantially from the records which are already a part of the record.  This Court does not find that they represent "new" evidence requiring remand for consideration by the Appeals Council.

The ALJ's finding with regard to the reduced weight accorded

Dr. Bentley's opinion on functional limitations is well-supported by specific and legitimate reasons. The remainder of the medical record, including Dr. Bentley's treatment notes, deviates radically from the limitations that Dr. Bentley included in his assessment. The pain findings stem largely from Claimant's subjective statements - which even Dr. Bentley believes does not warrant an increased dosage of pain medication as Claimant requested. This Court finds the ALJ adequately considered the factors set forth in <u>Watkins</u> and related a justifiable basis for reducing the weight given to Dr. Bentley's functional findings.

Claimant next asserts the ALJ erred in not obtaining a medical source statement on the functional limitations posed by Claimant's mental impairments from Dr. Diane Brandmiller. Certainly, the regulations generally require that the adjudicators request medical source statements from acceptable medical sources with their reports. Soc. Sec. R. 96-5p. However, nothing in the regulations require the reversal and remand of a case because such statements were not obtained. Indeed, the regulations expressly state that "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6); *see also* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6); <u>Branam v. Barnhart</u>, 385 F.3d 1268, 1273 (10th Cir.

11

2004). Therefore, the failure of the ALJ to obtain a statement from Dr. Brandmiller does not constitute reversible error.

Claimant also includes a new medical source statement as a part of the additional evidence which Claimant attempted to submit to the Appeals Council. Dr. Robert L. Spray indicated Claimant was markedly limited in several functional areas and moderately limited in numerous others. *See*, *Plaintiff's Brief* filed January 30, 2015 (Docket Entry #16), unnumbered attachment.

The legal question posed by counsel's apparent error in failing to submit the report to the Appeals Council is somewhat novel. However, a similar situation arose in the Chambers case. The claimant's counsel sent additional evidence to the Appeals Council but included the wrong social security number. The Council did not consider the evidence originally upon review or on a request for reconsideration when counsel realized his error. The Tenth Circuit emphasized that new, material, and chronologically relevant evidence must be considered by the Council in the first instance unless the district court determines that the evidence would not meet the criteria for subsequent consideration. Chambers, 389 F.3d at 1142.

Dr. Spray's report meets the criteria in that it is indeed new, material, and could be chronologically relevant if the

condition resulting in the alleged functional limitation existed during the relevant period. As a result, this Court must remand this case for consideration by the Appeals Council of this report before it can be considered on appeal to this Court.

Claimant also contends the ALJ erred in his credibility assessment. As this Court has related, Claimant's complaints of pain and functional limitation find little support in the objective medical record unless Dr. Spray's report is found to lend support to Claimant's subjective complaints. On remand, the Appeals Council or the ALJ, depending upon the level of remand followed by Defendant, shall re-evaluate Claimant's credibility after considering Dr. Spray's report.

**Step Five Analysis**

Claimant contends the hypothetical questioning of the vocational expert was flawed since it did not contain all of the limitations which were included in the RFC or should have been included in the RFC. After considering the effect of Dr. Spray's report on the RFC, the Appeals Council or ALJ shall consider whether the questioning of the vocational expert reflected the totality of the limitations contained in the resulting RFC.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the case REMANDED** for further proceedings consistent with this Report. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE